UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| PATARA MARLOW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:08-CV-249 |
| v. | ) | (VARLAN/GUYTON) |
| | ) | |
| AMERICA'S COLLECTIBLE NETWORK, INC., | ) | |
| d/b/a Jewelry Television, | ) | |
| MULTIMEDIA COMMERCE GROUP, INC., and | ) | |
| MCG MERGER SUB, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This civil action is before the Court on Defendants' Motion for Summary Judgment [Doc. 18], filed by defendants America's Collectible Network, Inc., d/b/a Jewelry Television, Multimedia Commerce Group, Inc., and MCG Merger Sub, Inc. Defendants' motion is in regard to the complaint [Doc. 1] brought by plaintiff, Patara Marlow, in which she alleges violations of the Equal Pay Act, 29 U.S.C. § 206(d). In the motion, defendants request that the Court grant summary judgment in their favor because plaintiff cannot make a prima facie case that defendants violated the Equal Pay Act at any point during the relevant time period. Plaintiff has filed a response in opposition [Doc. 21], and defendants have filed a reply [Doc. 22]. The matter is now ripe for the Court's determination.

The Court has carefully considered the defendants' motion for summary judgment, plaintiff's response, defendants' reply, and the supporting documentation [Docs. 18, 18-1,

19, 20, 21, 22, 22-1], all in light of the applicable law. For the reasons set forth herein, the defendants' motion for summary judgment [Doc. 18] will be **GRANTED**.

I.  **Relevant Facts**

Plaintiff brings this action alleging that defendants violated the Equal Pay Act, 29 U.S.C. § 206(d) (the "EPA"), while she was their employee during a period of time beginning on June 26, 2005, and lasting until May 16, 2008 ("the relevant time period") [*see* Doc. 1].[1] Defendants (referred to collectively as "ACN") are domestic corporations engaged in the business of selling gemstones and other collectibles via television programming aired throughout the United States [*Id.*, ¶¶ 2, 3, 4, 8]. In her complaint, plaintiff alleges that defendants paid two male employees, Robert Thomas and Christopher West, a higher hourly wage than she was paid for "work equal in skill, effort, and responsibility" [*Id.*, ¶ 10].[2] Additionally, plaintiff alleges that, unlike Mr. Thomas and Mr. West, she did not receive an annual performance evaluation and salary review which would have made her eligible to receive a pay raise [*Id.*, ¶ 11]. Further, plaintiff alleges that she was paid a lower wage than Mr. Thomas and Mr. West in spite of having greater professional accreditations and certifications [*Id.*, ¶ 12].

---

[1] Plaintiff originally alleged that defendants violated the EPA throughout her entire tenure as their employee, from December 15, 1998 to May 16, 2008. Upon a motion for partial dismissal filed by defendants, this Court issued an order on April 28, 2010, dismissing as time-barred plaintiff's claims arising prior to June 26, 2005 [*see* Doc. 11].

[2] All claims involving Robert Thomas have been dismissed pursuant to this Court's order [Doc. 11] granting defendants' motion for partial dismissal [Doc. 6].

### A. June 27, 2005 through January 2006

Plaintiff asserts that she has earned several professional accreditations, including that of Graduate Gemologist and advanced certifications in the study of pearls, diamonds, rubies, emeralds, and sapphires [Doc. 1, ¶ 12]. In 1998, when plaintiff first began working for ACN, she was employed as a show host and was responsible for presenting the company's products on its television programming [Doc. 20, p. 2].[3] In June 2005, plaintiff was transferred to the position of "internal consultant" [Doc. 18-1, p. 4]. As an internal consultant, plaintiff's duties involved working on a variety of different projects that required an expertise with gemstones [Doc. 1, ¶ 9]. In order to compare fully the plaintiff's job responsibilities with the job responsibilities of her only male comparator, Mr. West, the Court finds a detailed review of the projects on which plaintiff worked as an internal consultant to be necessary.

As her inaugural assignment as an internal consultant, and because of her expertise and experience with gemstones, plaintiff was assigned to the Strategic Initiatives Group (the "SIG") from June 27, 2005 until January 2006 [Doc. 18-1, p. 6]. As a member of SIG, plaintiff assisted in writing a comprehensive gemstone book, was put in charge of an outside photography effort to take pictures of gemstones for the book, and wrote about gemstones for the Marketing Department [*Id.*, pp. 9-11]. At her deposition, plaintiff testified that Mr. West was "not involved" in plaintiff's tasks as an internal consultant of "assisting . . . with the book, taking photographs of gemstones, writing for marketing, the castings projects, the

---

[3] Plaintiff's claims from the time she was employed as a show host, prior to June 2005, are time-barred [*see* Doc. 11].

details for gemstones on the websites and descriptions of gemstones and the care guide and the pamphlets and how to select gemstones[.]" [Doc. 18-1, p. 16].

During this time, Mr. West, who also had the title of internal consultant, worked on activities related to his experience in manufacturing, operations, project management, and logistics [*see* Doc. 19, ¶ 1]. Particularly, Mr. West led a project referred to as TV3, aimed at developing methods to automate tasks and improve the process of evaluating the show's performance [Doc. 19, ¶ 4]. Mr. West also worked on plans for a new call center located in Chattanooga, Tennessee [*Id.*, ¶ 6]. This project was to assess the feasibility of a supplemental and backup call center in the event of a disaster or catastrophic interruption of service [*Id.*]

### B. January 2006 through December 2006

In January 2006, SIG was disbanded and plaintiff was assigned permanently to the Marketing Department, where she continued to work on the gemstone book and write about gemstones [Doc. 18-1, pp. 16, 19-20]. Plaintiff also provided ACN's e-commerce department with information for articles about gemstones and trained employees in the call center and the returns department in "gemstone identification and fraudulent activity relating to gemstones" [*Id.*, p. 20]. In December 2006, plaintiff was assigned to serve as a consultant on the Gemstone Improvement Initiative (the "GII") [*Id.*]. The purpose of the GII was to restructure ACN's method of grading gemstones [*Id.*, pp. 20-21].

During this same time, Mr. West continued to work on developing plans for the new call center [Doc. 19, ¶ 6]. Mr. West also completed several competitive analysis projects and

4

worked on a project called QC Shipping, aimed at evaluating ACN's shipping process [*Id.*, ¶¶ 7, 8]. Mr. West's work on this project led to the creation of the Quality Control Department [*Id.*, ¶ 7].

### C. December 2006 through May 16, 2008

In December 2006, Mr. West was promoted to project manager in the Operations Department and was also assigned to be project manager for the GII [Doc. 19, ¶¶ 9, 11]. Mr. West served as the project manager of GII until the project ended in mid-2007 [*Id.*, ¶ 11]. During this same time, Mr. West also led several other projects in addition to the GII, including supervising the move of 600 company personnel to a new operations center and developing an automated gemstone facet machine [*Id.*, ¶¶ 10, 11]. Upon finishing the GII project, Mr. West was promoted to Director of Inbound Product [*Id.*, ¶ 13].

Plaintiff, during this time, consulted on the GII where Mr. West served as project manager [Doc. 19, ¶ 11]. After the GII ended in mid-2007 and until her termination on May 16, 2008, plaintiff continued in her position as an internal consultant, working on a photography project for the Gemstones Department, consulting with the Quality Control Department, as well as working on various other projects [Doc. 18-1, p 25-26].

## II. Analysis

### A. Standard of Review

Pursuant to Rule 56, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

5

56(c)(2). The moving party is entitled to summary judgment if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In response to a motion for summary judgment, the non-moving party must come forward with "significant probative evidence" to show that a genuine issue of material fact exists that may only be resolved at trial. *Curtis Through Curtis v. Univ. Match Corp., Inc.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. 317). The non-moving party cannot simply rest on the allegations in the complaint. *Curtis Through Curtis*, 778 F. Supp. at 1423 (citing *Celotex*, 477 U.S. 317). Rather, by producing probative evidence in the form of "affidavits, or by 'depositions, answers to interrogatories, and admissions on file,'" the non-moving party must do more than show there is some metaphysical doubt as to the material facts. *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993) (quoting *Celotex*, 477 U.S. at 324). *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Summary judgment is not proper if a reasonable factfinder could find in favor of either party with regard to a particular issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial judge is to consider the evidence in the light most favorable to the non-moving party, but this does not imply that the judge should "weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249, 251-52. Rather, the trial judge's inquiry is limited to whether he thinks there is a genuine factual dispute. To that end,

"the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict on the evidence presented." *Id.* at 252.

   B.   **Plaintiff's Claims Against Defendants**

   The EPA provides that:

> No employer having employees subject to [the EPA] shall discriminate, . . . between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

29 U.S.C. § 206(d)(1). To establish a prima facie case under the EPA, a plaintiff must demonstrate that "an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974). "'Equal work' does not require that the jobs be identical, but only that there exist 'substantial equality of skill, effort, responsibility and working conditions.'" *Conti v. Am. Axle & Mfr., Inc.*, 326 F. App'x 900, 913-14 (6th Cir. 2009) (quoting *Buntin v. Breathitt County Bd. of Educ.*, 134 F.3d 796, 799 (6th Cir. 1998)). Further, "[w]hether a job is substantially equal for purposes of the EPA is determined on a case-by-case basis and 'resolved by an overall comparison of the work, not its individual segments.'" *Beck-Wilson v. Principi*, 441 F.3d 353, 359 (6th Cir. 2006) (quoting *Odomes v. Nucare, Inc.*, 653 F.2d 246, 250 (6th Cir. 1981)).

Plaintiff alleges that defendants discriminated against her because of her gender in paying her a lesser amount than that paid to her male comparator, Mr. West. During the relevant time period, plaintiff contends Mr. West was paid a higher salary than she received as an internal consultant [Doc. 1, ¶ 11]. Plaintiff also asserts that Mr. West received an annual performance review and salary evaluation, which made him eligible for a pay raise [*Id.*]. Plaintiff alleges that she received neither a performance evaluation nor a salary review [*Id.*]. In further support of her allegations, plaintiff notes that, although Mr. West was earning a higher wage, he, unlike her, did not hold or receive any professional accreditations or advanced certifications during the relevant time period [*Id.*, ¶ 12].

Defendants argue in their motion for summary judgment that, given plaintiff's allegations and the issues of fact she has asserted, plaintiff cannot make a prima facie case that defendants violated the EPA during the relevant time period. Specifically, defendants assert that plaintiff and Mr. West "did not share skills, duties or responsibilities" [Doc. 20, p. 10]. Thus, defendants assert, plaintiff cannot support a claim under the EPA since she and Mr. West did not perform "equal work on jobs the performance of which requires equal skill, effort, and responsibility." 29 U.S.C. § 206(d)(1).

The Court agrees with defendants.

Plaintiff has not established a prima facie case for wage discrimination under the EPA because she and Mr. West did not perform similar work or share similar duties or responsibilities throughout the relevant time period. Plaintiff herself admits repeatedly that she and Mr. West performed different jobs at ACN. For example, plaintiff's job at ACN

involved her expertise with gemstones [Doc. 18-1, p. 8]. Mr. West, however, was not a gemstone expert and his job at ACN had nothing to do with gemstones [Doc. 19]. In her deposition, plaintiff acknowledges that she is "most certain" that Mr. West's job had nothing to do with gemstones "because [Mr. West had] point blank told [plaintiff] multiple times" that he knew "nothing about gemstones" [Doc. 18-1, pp. 15-16]. Furthermore, plaintiff acknowledges that, unlike her, Mr. West was not assigned to the Marketing Department after the SIG disbanded [*Id.*, p. 19]. And plaintiff identifies Mr. West as the "go-to person" (in fact, Mr. West was the project manager) for the GII project, whereas plaintiff served as a consultant on the project [*Id.*, p. 22; Doc. 19, ¶ 11]]. Mr. West was also appointed to a management position in December 2006 [Doc. 19, ¶ 9], while plaintiff, on the other hand, never held a management position [Doc. 20, p. 8].

In sum, plaintiff and Mr. West did not hold the same job, perform equal work, or share the same duties and responsibilities. The Court finds the following exchange between defendants' counsel and plaintiff at plaintiff's deposition to be noteworthy:

> Q. During the period from June of 2005 until you left in May of 2008, was there anybody else that, in your view, did the same sort of things, duties and had the same kind of responsibilities that you did?
>
> A. No.

[Doc. 18-1, p. 26]. By definition, then, the Court finds that Mr. West is not plaintiff's comparator for purposes of an EPA claim. *See, e.g., Conti v. Univ. Enter., Inc.*, 50 F. App'x 690, 696 (6th Cir. 2002) (rejecting a plaintiff's claim that her job duties were substantially

9

equal to those of comparable male employees because plaintiff had failed to present evidence of similar duties).

Plaintiff notes that, at least for a short time, she and Mr. West were both internal consultants at ACN [Doc. 18-1, p. 6; Doc. 19, ¶ 1]. However, the fact that plaintiff and Mr. West briefly shared the same job title is irrelevant to plaintiff's claim under the EPA. "In determining whether a comparator is appropriate for the purposes of an EPA claim, our focus is on actual job requirements and duties, rather than job classifications or titles." *Beck-Wilson*, 441 F.3d at 362. As the Court has already noted, plaintiff and Mr. West clearly had different job requirements and even though plaintiff and Mr. West shared the title of "internal consultant" from June 27, 2005 until January 2006, they did not perform the same job or share the same duties and responsibilities [*see* Doc. 18-1, pp. 12-17; Doc. 19, ¶ 11]. Additionally, Mr. West was eventually promoted to a management position, whereas plaintiff never received such a promotion. *See Balding-Margolis v. Cleveland Arcade*, 352 F. App'x 35 (6th Cir. 2009) (noting that male employees who received a higher wage held positions senior to that held by plaintiff); *see also Conti v. Univ. Enter., Inc.*, 50 F. App'x 690, 696 (6th Cir. 2002) (affirming the district court's grant of summary judgment in favor of the defendants, in part, because "any alleged comparability between plaintiff's position and the positions held by the five male employees identified by plaintiff was negated by the fact that the male employees had supervisory responsibilities.").

Plaintiff also cites her professional accreditations and certifications as evidence that she should have been paid a higher wage [Doc. 1, ¶ 12]. Plaintiff asserts in her response that,

"[i]t is [her] understanding that Mr. West acquired little more than a high school degree" [Doc. 21, p. 1].[4] However, as the court noted in *Beck-Wilson*, "[a] plaintiff establishes a prima facie [EPA] case by comparing the jobs held by the female and male employees, and by showing that those jobs are substantially equal, not by comparing the skills and qualifications of the individual employees holding those jobs." *Beck-Wilson*, 411 F.3d at 362-63. Thus, since plaintiff's job was not substantially equal to Mr. West's job, plaintiff's professional achievements do not entitle her to equal pay.

    **C.    Plaintiff's Request to Hold Defendants' Motion for Summary Judgment in Abeyance**

In plaintiff's response to defendants' motion for summary judgment, plaintiff asserts that discovery in this matter is still pending, has not been completed, and requests that the Court hold defendants' motion in abeyance until sufficient evidence has been presented and the appropriate number of depositions have been taken. In considering this request, the Court notes that plaintiff has failed to identify what discovery or depositions she has need of or why she has not been able to obtain such discovery since commencing this action two years ago. Further, the Court notes that defendants' motion for summary judgment was filed on March 3, 2010 and plaintiff has not sought leave of Court to supplement her response with any further discovery or depositions. Finally, the Court also notes that defendants have moved, and this Court has ordered, plaintiff to submit the initial disclosures required by Rule 26 of

---

[4] Mr. West states in his declaration, however, that he completed three years of college [Doc. 19, ¶ 1].

the Federal Rules of Civil Procedure and plaintiff has yet to comply with the Court's order [*see* Docs. 16, 27, 29, 40, 41]. Accordingly, after reviewing the record in this case, the Court declines to grant plaintiff's request to hold defendant's motion in abeyance.

## III. Conclusion

For the foregoing reasons, the Court finds that summary judgment in favor of defendants is appropriate. There is no genuine issue of material fact as to whether plaintiff and Mr. West performed "equal work . . . which require[d] equal skill, effort, and responsibility, and which [was] performed under similar working conditions." 29 U.S.C. § 206(d)(1). In fact, both parties submitted factual allegations and evidence that plaintiff and Mr. West were employed by ACN in different capacities with different duties and responsibilities. Thus, in light of the foregoing, the Court finds that plaintiff has not established a prima facie case under the EPA that defendants discriminated against her on the basis of her gender by paying her a lower wage.

Accordingly, and for the reasons stated herein, defendants' Motion for Summary Judgment [Doc. 18] is hereby **GRANTED** and plaintiff's claims are **DISMISSED** in their entirety. The Clerk of Court is **DIRECTED** to close this case. An appropriate order will be entered.

ORDER ACCORDINGLY.

    s/ Thomas A. Varlan
    UNITED STATES DISTRICT JUDGE